THE SECURITY STATE BANK OF BERESFORD, Respondent, v. THE BERESFORD HOLDING CORPORATION, et al, Appellants.

(253 N. W. 631.)

(File No. 7614.   Opinion filed February 13, 1934.)

See, also, 62 S. D. 238, 252 N. W. 635.

*J. W. Kaye,* of Beresford, and *Alan Bogue,* of Parker, for Appellants.

*Caldwell & Burns,* of Sioux Falls, for Respondent.

RUDOLPH, J. The Beresford State Bank became insolvent and suspended in July, 1926. In January, 1927, the bank was reorganized under the provisions of chapter 104 of the Session Laws of 1925. The articles of agreement for the reorganization of the bank provided that the slow, doubtful, and frozen assets of the bank in an amount constituting 70 per cent should be administered as a trust for the benefit of the depositors. The articles of agreement for the reorganization of the bank contained the following recital:

"Articles of Agreement for the Reorganization or Consolidation of the Beresford State Bank of Beresford, South Dakota.

"Whereas, the Beresford State Bank of Beresford, South Dakota, is now in the hands of the Superintendent of Banks of this State, and it is desired by the undersigned depositors and creditors of said bank to avoid the necessity of liquidating the assets by said Superintendent, and believing it to be to the best interests of the depositors to reorganize said bank in conformity to the provisions of Chapter 104 of the Session Laws of 1925 of the State of South Dakota, and have said bank reinstated as a solvent corporation, and reopen and continue business as a going concern or consolidate its resources and liabilities with the Security State Bank of Beresford, South Dakota."

The articles further provided as follows: "It is further agreed that the Beresford State Bank of Beresford, South Dakota, shall have the right at any time during the continuation of this trust agreement to exchange any assets or securities held by the said bank at the time this reorganization agreement becomes effective for assets or securities to be transferred by the said bank to the said trustees. And it is further understood that the said bank may take

out from the proceeds of the liquidation of the said trust proper-
ties, cash in exchange for assets and securities held by the said
bank at the time this reorganization becomes effective. The pur-
pose of this clause is to permit the said bank to replace any assets
now rated as good which may later develop into slow, doubtful or
frozen paper."

As a part of the transaction reorganizing the Beresford State
Bank, a consolidation was effected with the then solvent Security
State Bank of Beresford. An agreement for the consolidation of
the two banks was made, which agreement is as follows:

"Agreement for Consolidation of the Beresford State Bank
with the Security State Bank of Beresford, South Dakota.

"1st. It is hereby agreed that the Beresford State Bank shall
reorganize as provided in the 'Articles of Agreement' for reorgan-
ization of the Beresford State Bank, hereto attached and made a
part hereof.

"2nd. That the said banks be then consolidated under the
name of the Security State Bank of Beresford, South Dakota, and
that the Beresford State Bank then go out of business and its char-
ter be canceled.

"3rd. That the Security State Bank of Beresford, S. D., take
over and assume the liabilities of the Beresford State Bank consist-
ing of deposits to the amount of approximately $130,000.00, said
deposits to be offset by assets described as follows:

"Cash bonus of $3,000.00. Liberty bonds, premium and inter-
est on same to the amount of about $7,200.00. Posting machine at
$400 and the balance of said deposit to be offset by notes that have
been approved by the Depositors Committee and the Examiner in
Charge and accrued interest on same and cash.

"4th. The Beresford State Bank agrees to assign in the proper
manner all of the assets as above set forth, and to turn over cash,
bonds and machine as above outlined and permit the State Banking
Department to cancel its Charter.

"5th. The Security State Bank of Beresford, S. D., agrees to
accept the above described assets, also posting machine at the
agreed price of $400.00, also bonds and cash.

"6th. The Security State Bank of Beresford, S. D., agrees to

elect Robert P. Sundstrom as an officer in said bank at the agreed salary of $175.00 per month.

"This consolidation to be perfected and become effective on or before the 24th day of January, A. D., 1927.

"The above agreement is hereby accepted.

"Beresford State Bank,
"By J. A. Ontjes, V. P.

"Security State Bank of Beresford, S. D.
"By C. H. Olson, President."

As a result of the consolidation of the two banks, the depositors of the old Beresford State Bank were given credit in the Security State Bank for 30 per cent of their deposits in the old Beresford State Bank. The Security State Bank continued as a going concern until the 25th day of August, 1932, when it suspended and was taken in charge by the superintendent of banks. This is a proceeding brought by the superintendent of banks in charge of the Security State Bank to compel the Beresford Holding Corporation, which was organized to carry out the purposes of the trust agreement and liquidate the assets of the old Beresford State Bank which had been placed in the trust fund, to exchange assets now held by the Beresford Holding Corporation for certain assets of the Security State Bank, which the said Security State Bank acquired by virtue of its consolidation with the reorganized Beresford State Bank. The trial court ordered that the exchange be made, and this is an appeal from that order.

The assets now held by the Security State Bank, sought to be exchanged for assets of the Beresford Holding Corporation, fall into three different classes. The first class consists of notes and securities which were turned over to the Security State Bank by the Beresford State Bank at the time of consolidation. The second class consists of a note in the amount of $6,500, which is the result of a set of facts as follows: At the time the two banks were consolidated, the reorganized Beresford State Bank held notes and securities which it had taken from the old Beresford State Bank in the sum of $108,867.37. Upon the consolidation of the two banks the Security State Bank took over only $86,730.62 of these notes and securities. To make up the difference of $22,137.75,

the Beresford Holding Corporation made and executed its note payable to the Security State Bank for this amount, and took over the notes and securities in the same amount which the Security State Bank had not taken from the reorganized Beresford State Bank. The $22,137.75 note has been reduced by payments made by the Beresford Holding Corporation, until at the time these proceedings were instituted it amounted to the sum of $6,500. The third class of assets sought to be exchanged consists of a note in the sum of $5,794, made payable to the Security State Bank, and executed by the Beresford Holding Corporation. This note includes interest due on notes held by the Security State Bank, which had been taken over from the Beresford State Bank, and certain amounts advanced by the holding corporation for a return to the holding corporation of certain notes which the Security State Bank had taken over at the time of the consolidation.

The appellant first contends that the reorganization agreement does not contemplate that the Security State Bank after the consolidation with the Beresford State Bank should have the right to the exchange of assets provided for in the agreement. With this construction of the reorganization agreement we are unable to agree. It is clear that the agreement contemplated the consolidation of the two banks. The agreement, after being entitled an agreement for the reorganization or the consolidation of the Beresford State Bank, recited that the purpose of the agreement was to have the said bank reinstated as a solvent corporation and reopen and continue business as a going concern, or consolidate its resources and liabilities with the Security State Bank. One of the resources of the Beresford State Bank, as reorganized, would be the right to the exchange of assets provided for in the agreement. When this same agreement expressly stated that upon consolidation the Security State Bank should take over the resources of the reorganized Beresford State Bank, there cannot be much question but that it was within the contemplation of the agreement that the resource of the Beresford State Bank to exchange assets would inure to the Security State Bank upon the consolidation being perfected. The appellant further argues that the agreement for the consolidation of the two banks made no provision for the exchange of assets by the Security State Bank, and that, therefore, this right did not vest in the Security State Bank. The agreement for the consolida-

tion of the two banks, as shown by the first paragraph thereof, specifically referred to the articles of agreement for the reorganization of the Beresford State Bank, and made those articles a part of the agreement for consolidation. After this agreement was effected, assets of the Security State Bank, which it had received from the Beresford State Bank, were in fact actually exchanged for assets of the holding corporation until a time shortly before this proceeding was commenced. As stated above, we think it clear that the articles of agreement for the reorganization of the Beresford State Bank contemplated that this right to exchange assets should inure to the benefit of the Security State Bank upon the consolidation of the two banks; this conclusion, when considered together with the fact that the agreement for the consolidation of the two banks specifically referred to the articles of agreement for the reorganization and made those articles a part of the agreement for the consolidation, does not leave much room for doubt as to the right of the Security State Bank to have the benefit of that provision of the articles of agreement which provides for the exchange of assets.

Exhibit C, offered and received in evidence, is an instrument signed by the directors of the holding corporation, wherein these directors agreed that, in consideration of the consolidation of the two banks, they would extend to the Security State Bank the right to exchange assets as provided in the agreement for the reorganization of the Beresford State Bank. The appellant questions the authority of the signers of this agreement to make any such agreement. However, in view of our construction of the articles of agreement of reorganization and the agreement for the consolidation of the two banks, the right of the Security State Bank to exchange assets exists independent of Exhibit C, and it becomes unnecessary to further consider that exhibit.

The appellant next contends that, even if the Security State Bank had the right to exchange assets, as provided in the articles of agreement of reorganization, that right should not be construed so as to give to the Security State Bank the right to exchange the $6,500 and $5,794 notes, referred to above, for assets of the Beresford Holding Corporation.

We do not believe it necessary to decide whether the holding corporation had authority to execute these notes. Whether we con-

sider them as valid and authorized obligations of the holding corporation, or not, we believe the conclusion reached by the trial court correct. We will treat of these notes first as valid. As pointed out above, this $5,794 note, in part, represents interest due on assets taken over by the Security State Bank at the time of consolidation, and the balance represents the amount of certain assets taken by the Security State Bank at the time of consolidation and subsequently returned to the holding corporation. The obligation of the holding corporation to exchange assets extended to "any assets or securities held by the said bank at the time this reorganization agreement becomes effective." We think it clear that the holding corporation by taking over these notes, which were assets "held by the said bank at the time" the reorganization agreement became effective, and giving to the Security State Bank its note in lieu thereof, and in payment of interest due on other obligations, simply changed the form and not the substance of its obligation to exchange assets. The assets represented by the holding corporation note were assets held by the bank at the time of reorganization. Had the bank retained these notes as such, it would have had the right of exchange for other assets of the holding corporation. The fact that it no longer holds the notes, but holds in lieu thereof the note of the holding corporation (which note represents the original notes which already have been transferred to the holding corporation), does not, in our opinion, affect the substance of the obligation of the holding corporation. By virtue of this provision giving the right of exchange, all of the assets of the holding corporation became security (at least to the extent of one exchange) for notes held by the Security State Bank, and covered by the agreement, and since this $5,974 note (the only source for the payment of which is the assets of the holding corporation) was given in exchange for notes covered by the agreement, and since the right of exchange has never been exercised as to these notes, we are of the opinion that the right should and must attach to the $5,974 note, if valid.

What has been said with reference to the $5,974 note applies to the $6,500 note, which also represents assets which were subject to the right of exchange, and upon which the right has never been exercised.

The appellant argues that the holding corporation had no au-

thority to execute and deliver these notes to the Security State Bank. Should we concur in this contention of appellant, it would necessarily follow that the bank would be entitled to a return from the holding corporation of the assets represented by the note. These assets are still in the possession of the holding corporation. As stated above, these orginal notes were notes taken by the bank at the time of reorganization, and in the hands of the Security State Bank would be subject to the exchange provision.

The order appealed from is affirmed.

All the Judges concur.